## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID A. PRENTICE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| DIPLOMAT PHARMACY, INC., BRIAN GRIFFIN, PHILIP R. HAGERMAN, BENJAMIN WOLIN, REGINA BENJAMIN, DAVID C. DREYER, KENNETH KLEPPER, SHAWN C. TOMASELLO, UNITEDHEALTH GROUP INCORPORATED, and DENALI MERGER SUB, INC., | ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on December 9, 2019 (the "Proposed Transaction"), pursuant to which Diplomat Pharmacy, Inc. ("Diplomat" or the "Company") will be acquired by affiliates of OptumRx, Inc.

2.      On December 9, 2019, Diplomat's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with UnitedHealth Group Incorporated, a Delaware corporation ("Parent"), and Denali Merger Sub, Inc. ("Merger Sub," and together with Parent, "UnitedHealth"). Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer")

to purchase all of Diplomat's outstanding common stock for $4.00 per share in cash. The Tender Offer is set to expire on February 7, 2020.

3.     On January 9, 2020, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Diplomat common stock.

9.      Defendant Diplomat is a Michigan corporation and a party to the Merger Agreement.  Diplomat's common stock is traded on the New York Stock Exchange under the ticker symbol "DPLO."

10.     Defendant Brian Griffin is Chief Executive Officer and Chairman of the Board of the Company.

11.     Defendant Philip R. Hagerman is a director of the Company.

12.     Defendant Benjamin Wolin is a director of the Company.

13.     Defendant Regina Benjamin is a director of the Company.

14.     Defendant David C. Dreyer is a director of the Company.

15.     Defendant Kenneth Klepper is a director of the Company.

16.     Defendant Shawn C. Tomasello is a director of the Company.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

19.     Defendant Merger Sub is a Michigan corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Diplomat (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21.     This action is properly maintainable as a class action.

22.     The Class is so numerous that joinder of all members is impracticable.  As of December 3, 2019, there were approximately 75,997,792 shares of Diplomat common stock

outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23.    Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

27.    Diplomat, through its specialty pharmacy and infusion services, helps people with complex and chronic health conditions in all fifty states and Washington, D.C., partnering with payers, providers, hospitals, and manufacturers.

28.    On December 9, 2019, Diplomat's Board caused the Company to enter into the Merger Agreement with UnitedHealth.

29.    Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of Diplomat's outstanding common stock for $4.00 per share in cash.

30.    According to the press release announcing the Proposed Transaction:

> OptumRx, the pharmacy care services business of Optum, and Diplomat, a provider of specialty pharmacy and infusion services, are combining. The agreement calls for the acquisition of Diplomat's outstanding common stock for $4.00 per share through a cash tender offer and assumption of outstanding debt. . . .

> The transaction was unanimously approved by the Board of Directors of Diplomat.

31.    The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 5.03(a) of the Merger Agreement provides:

> Except as permitted by this Section 5.03, (i) from and after the date hereof, the Company shall, and shall cause the Company Subsidiaries and its affiliates to, and shall cause its and their respective officers (including members of the Company's executive committee and management committee), directors, financial advisors, investment bankers and legal counsel to, and shall use reasonable best efforts to cause its and their other Representatives (such other Representatives that are employees of the Company or any of the Company Subsidiaries, other than directors, officers and members of the Company's executive committee and management committee, the "Other Employees") to, immediately cease any solicitations, discussions or negotiations with any persons that may be ongoing with respect to any actual or potential Competing Proposal, promptly request the return or destruction of all confidential information previously furnished to, and, within twenty-four (24) hours of the date hereof, terminate all physical and electronic data room access previously granted to, any such person or its Representatives and (ii) from and after the date hereof until the earlier of the Acceptance Time and the termination of this Agreement in accordance with its terms, the Company shall not, shall cause the Company Subsidiaries and its affiliates to not, and shall cause its and their respective officers (including members of the Company's executive committee and management committee), directors, financial advisors, investment bankers and legal counsel and shall use reasonable best efforts to cause, its and their other Representatives not to, (A) directly or indirectly through intermediaries

initiate, solicit or knowingly encourage, induce or facilitate the submission of any Competing Proposal or any inquiry or proposal that would reasonably be expected to lead to a Competing Proposal, (B) furnish any non-public information regarding the Company or any Company Subsidiary to any third person in connection with or in response to a Competing Proposal or any inquiry or proposal that would reasonably be expected to lead to a Competing Proposal, (C) directly or indirectly through intermediaries conduct, continue or otherwise participate in any discussions or negotiations with any third person, or cooperate in any way with any such third person, with respect to any Competing Proposal or any inquiry or proposal that would reasonably be expected to lead to a Competing Proposal (other than, solely in response to an unsolicited inquiry, to refer the inquiring person to the restrictions contained in this Section 5.03 and to limit its conversation or other communication regarding such Competing Proposal or inquiry or proposal that would reasonably be expected to lead to a Competing Proposal exclusively to such referral), (D) approve, recommend, execute or enter into any letter of intent, acquisition agreement, merger agreement, joint venture agreement or similar Contract (in each case, whether written, oral, binding or non-binding) with respect to a Competing Proposal (other than an Acceptable Confidentiality Agreement in accordance with Section 5.03(b)), (E) approve any transaction under, or any third person becoming an "interested shareholder" under, Section 778 of the MBCA (except a transaction involving Parent, Sub or their respective affiliates), (F) amend or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any Company Subsidiary or (G) resolve to do any of the foregoing. The Company agrees that any violation of the restrictions set forth in this Section 5.03 by any of its affiliates, officers (including members of the Company's executive committee and management committee), directors, financial advisors, investment bankers or legal counsel shall be deemed a breach of this Section 5.03 by the Company.

32.     Additionally, the Company must promptly advise UnitedHealth of any proposals or inquiries received from other parties.  Section 5.03(b) of the Merger Agreement states, in relevant part:

The Company will promptly (and in any event within twenty-four (24) hours) advise Parent in writing (1) of the receipt of any Competing Proposal or a request for information relating to the Company or any Company Subsidiary that is reasonably likely to lead to, or that contemplates, a Competing Proposal, the material terms and conditions of any such Competing Proposal (including an unredacted copy of such Competing Proposal or, where such Competing Proposal is not in writing, a description of the terms thereof) and the identity of the person making any such Competing Proposal and the Company shall keep Parent reasonably informed on a current basis of the material terms and status (including any change to the material terms thereof or any material change to the status) of any Competing Proposal, including by promptly (and in no event later than twenty-

four (24) hours after receipt) providing to Parent copies of any proposals, indications of interest, draft agreements and material correspondence relating to such Competing Proposal or (2) if it commences furnishing non-public information or commences discussions or negotiations as provided in this Section 5.03(b) and will contemporaneously provide to Parent any information concerning the Company or any Company Subsidiary provided or made available to such other person (or its Representatives) that was not previously provided to Parent. . . .

33.    Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants UnitedHealth a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 5.03(d) of the Merger Agreement provides:

Notwithstanding anything to the contrary contained in this Agreement, at any time prior to the Acceptance Time, the Company's board of directors may make a Change of Company Recommendation if and only if, prior to taking such action:

(i) (A) a bona fide, written, Competing Proposal (that did not result from a breach of this Section 5.03 and that did not result from action by any of the Other Employees that would have been a breach of this Section 5.03 if such action had been taken by an officer or director of the Company or any of the Company Subsidiaries) is made to the Company by a third person and such Competing Proposal is not withdrawn and (B) the Company's board of directors determines in good faith, after consultation with its independent financial advisors and outside legal counsel, that such Competing Proposal constitutes a Superior Proposal and that failure to make a Change of Company Recommendation would be inconsistent with the Company's board of directors' fiduciary duties under applicable Law;

(ii) the Company provides Parent prior written notice of the Company's intention to make a Change of Company Recommendation (a "Notice of Change of Recommendation"), which Notice of Change of Recommendation shall (A) include the basis for such action, (B) identify the person making the Superior Proposal and (C) attach the most current draft of any proposed Company Acquisition Agreement with respect to such Superior Proposal and a copy of any related financing commitments in the Company's possession or under its control (or, in each case, if not provided in writing to the Company, a written summary of the terms thereof) (it being agreed that the delivery of the Notice of Change of Recommendation by the Company and, to the extent that such disclosure is required by applicable U.S. federal securities Law, the public announcement thereof shall not constitute a Change of Company Recommendation);

(iii) the Company and its Representatives have negotiated in good faith with Parent, to the extent Parent wishes to negotiate, with respect to any changes to the terms of

this Agreement proposed by Parent for at least five (5) Business Days following receipt by Parent of such Notice of Change of Recommendation (it being understood and agreed that any amendment to any of the financial terms (including the form, amount and timing of payment of consideration) or any other material term of such Superior Proposal shall require a new Notice of Change of Recommendation and the Company and its Representatives shall be required to comply with the requirements of this Section 5.03(d) anew with respect to such new Notice of Change of Recommendation except that the five (5) Business Day period referred to above shall instead be an additional two (2) Business Day period from the date of such notice); and

(iv) following the period referred to in Section 5.03(d)(iii), giving due consideration to any changes to the terms of this Agreement proposed by Parent in writing to the Company, the Company's board of directors has determined in good faith, after consultation with its independent financial advisors and outside legal counsel, that such Competing Proposal would nevertheless continue to constitute a Superior Proposal if such changes to which Parent has committed to in writing were to be given effect and that failure to make a Change of Company Recommendation would be inconsistent with the Company's board of directors' fiduciary duties under applicable Law.

34.    The Merger Agreement also provides for a "termination fee" of $15 million payable by the Company to UnitedHealth if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

35.    Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

36.    As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

37.    First, the Solicitation Statement omits material information regarding the Company's financial projections.

38.    The Solicitation Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBIT, (c) EBITDA, and (d) EBIT; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

39.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

40.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Foros Securities LLC ("Foros").

41.     With respect to Foros' Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the terminal values for the Company; (ii) Foros' basis for applying perpetual growth rates of 2.5%, 3.0%, and 3.5%; and (iii) the individual inputs and assumptions underlying the discount rate of 10.5%.

42.     With respect to Foros' Historical Trading Multiples Analysis, the Solicitation Statement fails to disclose: (i) the next twelve months Adjusted EBITDA used by Foros in the analysis; and (ii) the share based compensation used by Foros in the analysis.

43.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44.     Third, the Solicitation Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

45.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that

information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.    Fourth, the Solicitation Statement fails to disclose whether the Company entered into any confidentiality agreements that contained "don't ask, don't waive" provisions that are or were preventing the counterparties from requesting waivers of standstill provisions to submit offers to acquire the Company.

47.    Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

48.    The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

49.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## <u>COUNT I</u>

### **(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

50.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.    Section 14(e) of the 1934 Act states, in relevant part, that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

52.    Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under

which they were made, omitted to state material facts necessary to make the statements therein not misleading.

53.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

54.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

55.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

56.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

57.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

58.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

59.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

60.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

61.      Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62.      Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

63.      Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

64.      The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

65.      Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

66.      The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

67.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and UnitedHealth)**

68.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69.    The Individual Defendants and UnitedHealth acted as controlling persons of Diplomat within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of Diplomat and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

70.    Each of the Individual Defendants and UnitedHealth was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and, exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

72.    UnitedHealth also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

73.    By virtue of the foregoing, the Individual Defendants and UnitedHealth violated Section 20(a) of the 1934 Act.

74.    As set forth above, the Individual Defendants and UnitedHealth had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

75.    As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

76.    Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.    Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 16, 2020                          **RIGRODSKY & LONG, P.A.**

                                                 By:   */s/ Gina M. Serra*
                                                       _____
                                                       Brian D. Long (#4347)
**OF COUNSEL:**                                        Gina M. Serra (#5387)
                                                       300 Delaware Avenue, Suite 1220
**HOLZER & HOLZER, LLC**                               Wilmington, DE 19801
Marshall P. Dees                                       Telephone: (302) 295-5310
1200 Ashwood Parkway, Suite 410                        Facsimile: (302) 654-7530
Atlanta, GA 30338                                      Email: bdl@rl-legal.com
Telephone: (770) 392-0090                              Email: gms@rl-legal.com
Facsimile: (770) 392-0029
Email: mdees@holzerlaw.com                             *Attorneys for Plaintiff*